E-FILED
Wednesday, 03 February, 2021 02:48:40 PM
Clerk, U.S. District Court, ILCD

FEB – 3 2021

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21- 30014 |
| | ) | Vio: Title 18, United States Code, |
| WILLIAM SAMUEL McCANN, JR., | ) | Sections 1343 and 1956(a)(1)(B)(i), |
| | ) | and Title 26, United States |
| | ) | Code, Section 7201. |
| Defendant. | ) | |

## INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNTS 1-7
### (18 U.S.C. § 1343 - Wire Fraud)

### The Defendant

1.      Defendant, **WILLIAM SAMUEL McCANN, Jr.,** was a resident of the Central District of Illinois. He and his spouse resided in Carlinville and later Plainview, Macoupin, County, Illinois, filed joint federal tax returns, and maintained their joint personal financial accounts at two banks in Carlinville. Defendant **McCANN** also owned and operated construction related-businesses, including McCann Construction Inc. and McCann Building Contractors.

2.      Defendant **McCANN** served as an Illinois State Senator from 2011 to 2019. From 2011 to 2013, he represented the 49th District of Illinois.

From 2013 to January 2019, Defendant **McCANN** represented the redrawn 50th District of Illinois. In 2018, after forming the Conservative Party of Illinois, he unsuccessfully ran for Governor of Illinois.

3.     As a political candidate, Defendant **McCANN** organized multiple political committees, which he registered with the Illinois State Board of Elections (ISBE). These committees included Sam McCann for Senate, Sam McCann for Senate Committee, McCann for Illinois, and the Conservative Party of Illinois. Defendant **McCANN** also opened bank accounts for his political committees (Campaign Accounts), into which campaign funds were deposited, at the same two banks in Carlinville where he maintained his personal accounts. From approximately April 2011 to November 2018, Defendant **McCANN** and his political committees received more than $5,000,000 in campaign donations, which were then deposited into his Campaign Accounts.

### Relevant Illinois Campaign Finance Law

4.     Under Illinois Law, the Illinois Campaign Disclosure Act (Act) required candidates and individuals who accepted contributions or made expenditures in excess of $5,000 within a 12-month period in support of or in opposition to a candidate or candidates for public office to file a Statement of Organization (SO) with ISBE. The SO required the disclosure of certain types of information, including designation of the committee as a candidate,

2

political party, political action, or other type of committee, the purpose of the committee -- such as to support a particular candidate, the name of any candidate the committee was supporting, the designation of a committee chairperson and treasurer, and the financial institution where campaign funds were maintained.

5.      In addition, under the Act, all political committees were required to complete reports (known as a D-2) disclosing contributions, expenditures, and any outstanding debts of the committee during a specific reporting period. All transactions for the committee that had an aggregate (cumulative) value in excess of $150 were required to be itemized on various schedules as part of the committee reports. The main report required to be filed with the ISBE was the Quarterly Report, using the D-2 form. These reports were required to be filed electronically.

6.      Finally, the Act prohibited certain types of expenditures of campaign funds. Specifically, campaign funds could not be expended: (1) in violation of any law; (2) if they were clearly in excess of fair market value; (3) to repay any personal loans or to repay any debts other than loans to the committee on behalf of the committee or for repayment of goods and services purchased by the committee under a credit agreement; (4) for a personal residence; (5) for clothing or personal laundry expenses; (6) for personal travel; (7) for membership or club dues for organizations primarily engaged

3

in providing health, exercise, or recreational services; (8) for anything for which a person has been reimbursed by the State or any person; (9) for purchase or lease of a motor vehicle for personal use; (10) for tuition or other educational expenses; or (11) for payments to the candidate or his or her family unless for compensation for services actually rendered.

### IRS Income Tax Return Form 1040

7.    IRS Form 1040 is the form used by taxpayers to report and file their U.S. Individual Income Tax Returns. Among other individual demographic and financial information reported on the IRS Form 1040, taxpayers were required to identify and report their total income for a given reporting year, and Schedule C of Form 1040 required a taxpayer to report their total gross receipts.

8.    Each taxpayer signed a declaration that accompanied each Form 1040, certifying under the penalty of perjury, that the statements in the form are "true, correct, and accurately list all amounts and sources of income [the taxpayer] received during the tax year."

## The Scheme to Defraud

9.      Beginning in or about May 2015, and continuing to in or about June 2020, in the Central District of Illinois, and elsewhere, the defendant,

### WILLIAM SAMUEL McCANN, Jr.,

knowingly devised and executed a scheme to defraud donors and contributors to his campaigns for Illinois State Senate and the Conservative Party of Illinois and to obtain money and property by means of materially false pretenses, promises, and representations.

10.     It was a purpose and objective of the scheme that Defendant McCANN enrich himself by converting contributions and donations to his campaigns for Illinois State Senate and to the Conservative Party of Illinois to his personal use. It was a further purpose and objective of the scheme that he conceal from donors, the public, ISBE, and law enforcement authorities that he was engaging in such conversion of campaign funds for his personal use and enrichment.

11.     As part of the scheme, Defendant McCANN solicited and accepted, and caused to be solicited and accepted, thousands of dollars in campaign contributions and donations to his political campaigns for Illinois State Senate and to the Conservative Party of Illinois and deposited, and caused to be deposited, such contributions and donations into his Campaign

5

Accounts. He then stole, misappropriated, and converted thousands of dollars in campaign funds to his personal use.

12.     As part of the scheme, Defendant **McCANN** made material false representations to donors that campaign contributions and donations would be used in support of his political campaigns.

**Purchases of Vehicles**

13.     As part of the scheme, Defendant **McCANN** used more than $60,000 in campaign funds to partially fund the purchases of a 2017 Ford Expedition in April 2017 and a 2018 Ford F-250 truck in July 2018, which he caused to be titled in his own name and used for personal use. As a further part of the scheme, Defendant **McCANN** then used funds from Campaign Accounts to pay for loan payments on the F-250 and for fuel and insurance expenses for both vehicles, while at the same time using campaign funds for mileage reimbursements to himself, to which he was not entitled, for mileage expenses that, as a result, he did not incur.

**Purchases of Trailer and Motor Home**

14.     As a further part of the scheme, on or about March 2, 2018, Defendant **McCANN** caused his Campaign Account to issue a $10,000 check to a Shipman, Illinois business as down payment on a motor home. After purchase of the motor home was not completed, he then caused the business

to issue a $10,000 refund check payable to William McCann, which he then caused to be deposited into his personal checking account.

15.  As a further part of the scheme, Defendant **McCANN** used $18,000 in campaign funds for the purchase of a 2018 recreational travel trailer in April 2018 and $25,000 in campaign funds for the purchase of a 2006 recreational motor home in May 2018, both of which he titled in his personal name.

16.  As a further part of the scheme, and after purchasing the recreational travel trailer and motor home with campaign funds, Defendant **McCANN** established an on-line account with a recreational vehicle (RV) rental business in Ohio, listing the travel trailer and motor home for rent and identifying himself as the owner (Sam McCann) with a residential address and an email address. Defendant **McCANN** then established a second on-line account with the same RV rental business and identified himself this time as William McCann, a potential renter, with a residential address and email address that were different from those he listed as an owner.

17.  As a further part of the scheme, and from approximately May 2018 to June 2018, Defendant **McCANN,** while representing himself as William (the renter), rented both the campaign-purchased travel trailer and motor home from Sam (himself), the owner, through the RV rental business. In so doing, Defendant **McCANN**, as the purported renter, caused a total of

7

approximately $62,666.70 in funds from his Campaign Accounts to be used
for rental payments to the RV rental business, which, after retaining
commission expenses of approximately $9,838.90, then paid Defendant
**McCANN**, as the identified owner, approximately $52,827.80 in rental
payments by direct deposit from Ohio to his personal checking account in the
Central District of Illinois. After receiving the rental payments, Defendant
**McCANN** reimbursed the Campaign Accounts with a payment of only
$18,000, resulting in more than $77,000 in campaign funds being converted
to his personal use for the initial campaign purchases of the travel trailer and
motor home and the receipt of subsequent rental payments for them to
himself.

**Payment of Personal Loans**

18.  As a further part of the scheme, Defendant **McCANN** repeatedly
used campaign funds for the payment of personal debt. Specifically, on or
about October 4, 2016, he caused a $20,000 cashier's check that was funded
by a Campaign Account to be issued to himself personally. Defendant
**McCANN** then took the cashier's check to a different bank where his personal
accounts, including personal loans, were maintained and used the cashier's
check to pay off a personal loan, including legal fees, that had been originally
issued to him as an equipment loan in 2011 and that was in collection by the
bank in October 2016 due to non-payment.

19.    As a further part of the scheme, beginning in or about May 2015 and continuing to in or about August 2020, Defendant **McCANN** repeatedly used campaign funds to make a total of approximately $64,750 in payments on two separate personal mortgage loans that were secured by his former residence in Carlinville and an adjoining property that he used as an office for his construction business.

**Payments of Campaign Funds Directly to Defendant McCANN**

20.    As a further part of the scheme, Defendant **McCANN** repeatedly caused funds from his Campaign Accounts to be paid to himself and his spouse and converted to their personal use that were not legitimate payments for services actually rendered to his political committees. For example, in January 2017, Defendant **McCANN** closed a Campaign Account that had been opened for only four months and caused the account balance of approximately $2,279.76 to be distributed in the form of a cashier's check payable to Sam McCann For Senate, which he then caused to be deposited into his personal checking account.

21.    As a further part of the scheme, and from about May 2015 and continuing to about June 2018, Defendant **McCANN** repeatedly caused payments totaling more than $70,000 to be made to him personally from funds in his Campaign Accounts, not all of which were for any services actually rendered to his political committees or reported to ISBE.

22. As a further part of the scheme, beginning in about November 2018, after his unsuccessful campaign for Governor of Illinois and his formation of the Conservative Party of Illinois, after which he was no longer a candidate for any office and did not financially support any other candidate, and continuing to about June 2020, Defendant **McCANN** repeatedly caused the Conservative Party of Illinois to issue a total of approximately $187,000 in payments to himself personally that were not for any services actually rendered and that were not reported to ISBE, most of which were routed through a payroll service, and an additional approximately $52,282.35 in payments for payroll taxes. By routing the payments through a payroll service, Defendant **McCANN** was able to conceal himself as the payee for the expenditures from the Campaign Account. These payments to Defendant **McCANN** and for the payment of payroll taxes resulted in the depletion of donations and campaign funds that were originally deposited into his Campaign Accounts.

## Payment of Personal Expenses

23.    As a further part of the scheme, Defendant **McCANN** repeatedly caused his Campaign Accounts to directly pay for a total of approximately $50,000 or more in personal expenses, including Green Dot credit card payments related to a family vacation in Colorado and other personal expenses, charges from Apple iTunes, Amazon, a skeet and trap club, Cabelas, Scheels, Best Buy, a gun store, and cash withdrawals.

## Falsification of D-2 Reports Filed With ISBE

24.    As a further part of the scheme, Defendant **McCANN** repeatedly filed materially false D-2 forms with ISBE, falsely stating the nature, purpose, and amount of expenditures from Campaign Accounts, including those described above, the balances in and existence of Campaign Accounts, and entirely omitting other expenditures, all of which concealed his conversion of campaign funds to his personal use and enrichment.

25.    As a result of the scheme, Defendant **McCANN** caused a loss of more than $200,000.

## Executions of the Scheme

26.    On or about the below-listed dates, and for each count, in the Central District of Illinois and elsewhere, the defendant,

## WILLIAM SAMUEL McCANN, Jr.

for the purpose of executing and attempting to execute the scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, sounds, and images, in the manner identified below:

| Count | Date | Amount | Purpose |
|-------|------|--------|---------|
| 1 | 5/29/18 | $26,066.70 | Electronic Rental Payment From Campaign Account in Carlinville, IL to RV Rental Business in Ohio |
| 2 | 5/29/18 | $36,600.00 | Electronic Rental Payment from Campaign Account in Carlinville, IL to RV Rental Business in Ohio |
| 3 | 6/5/18 | $5,000.00 | Direct Deposit Rental Payment from RV Rental Business in Ohio to Personal Checking Account in Carlinville, IL |
| 4 | 6/19/18 | $5,000.00 | Direct Deposit Rental Payment from RV Rental Business in Ohio to Personal Checking Account in Carlinville, IL |

| 5 | 7/16/18 | None | Electronic Filing of False Quarterly D-2 Report With ISBE |
| 6 | 12/30/19 | $4,148.79 | Electronic Payment From Campaign Account in Carlinville, IL to Payroll Service in Missouri |
| 7 | 12/31/19 | $4,148.79 | Direct Deposit Payment from Payroll Service in Missouri to Personal Checking Account in Carlinville, IL |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 8
### (18 U.S.C. § 1956(a)(1)(B)(i) – Money Laundering)

1.     The allegations contained in Paragraphs 1 through 25 of Counts 1 through 7 are incorporated herein by reference.

2.     On or about June 15, 2018, in the Central District of Illinois, and elsewhere, the defendant,

**WILLIAM SAMUEL McCANN, Jr.,**

did knowingly conduct, and cause to be conducted, a financial transaction affecting interstate and foreign commerce, namely, a $5,000.00 direct deposit rental payment from the RV rental business in Ohio to his personal checking account in Carlinville, IL, which involved the proceeds of a specified unlawful activity, namely, wire fraud, as charged in Counts 1 through 7 of this Indictment, knowing that the transaction was designed, in whole or in part, to conceal the nature, location, source, ownership, and control of the proceeds of a specified unlawful activity, namely, wire fraud, as charged in Counts 1 through 7 of this Indictment, and that while conducting such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18 United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT 9
### (26 U.S.C. § 7201 – Tax Evasion)

1.      The allegations contained in Paragraphs 1 through 25 of Counts 1 through 7 are incorporated herein by reference.

2.      From in or about January 2018 through in or about October 2019, in the Central District of Illinois and elsewhere, the defendant,

### WILLIAM SAMUEL McCANN, JR.,

a resident of Plainvew, Illinois, willfully attempted to evade and defeat income tax due and owing by him and his spouse to the United States of America, for the calendar year 2018, by committing the following affirmative acts, among others:

a.      Preparing and causing to be prepared, and signing and causing to be signed, a false and fraudulent Joint Income Tax Return, Form 1040, which was submitted to the Internal Revenue Service.

b.      As described above, on or about March 2, 2018, Defendant McCANN caused his Campaign Account to issue a $10,000 check to a Shipman, Illinois business as a down payment on a motor home. After purchase of the motor home was not completed, he then caused the business to issue a $10,000 refund check payable to William McCann, which he then caused to be deposited into his personal checking account.

15

c.     In or about April and May 2018, Defendant **McCANN** used $18,000 in campaign funds for the purchase of a 2018 recreational travel trailer and $25,000 in campaign funds for the purchase of a 2006 motor home, both of which he titled in his personal name.

d.     In or about May and June 2018, Defendant **McCANN** established on-line accounts with a RV rental business in Ohio. He then listed the campaign-purchased travel trailer and recreational motor home for rent through the RV rental business and identified himself as Sam McCann, the owner, with a residential address and an email address. Defendant **McCANN** then established a second on-line account with the same RV rental business and identified himself this time as William McCann, the renter, with a residential address and email address that were different from those he listed as an owner.

e.     Defendant **McCANN,** while representing himself as William (the renter), rented both the campaign-purchased travel trailer and motor home from Sam (himself), the owner, through the RV rental business. In so doing, Defendant **McCANN**, as the purported renter, caused a total of approximately $62,666.70 in funds from his Campaign Accounts to be used for rental payments to the RV rental business, which, after retaining commission expenses of approximately $9,838.90, then paid Defendant **McCANN**, as the identified owner, approximately $52,827.80 in rental

16

payments by direct deposit from Ohio to his personal checking account in the Central District of Illinois.

      f.      Preparing and causing to be prepared, and filing and causing to be filed, on or about July 16, 2018, a false Quarterly D-2 Report with ISBE for the second quarter of 2018.

      All in violation of Title 26, United States Code, Section 7201.

17

## FORFEITURE ALLEGATIONS

1.    The allegations contained in Counts 1 through 8 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(c), 982(a)(1), and Title 28 United States Code, Section 2461(c).

2.    Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1343 and 1956(a)(1)(B)(i) as set forth in Counts 1 through 8 of this Indictment, the defendant,

### WILLIAM SAMUEL McCANN, Jr.,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(c), 982(a)(1), and Title 28 United States Code, Section 2461(c), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses.

A TRUE BILL

s/ Foreperson

FOREPERSON

s/ Gregory M. Gilmore

JOHN C. MILHISER     for
UNITED STATES ATTORNEY/TB